UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUDINA MEKOLLI,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ, Seattle Field Office Director, United States Immigration and Customs Enforcement, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-02815-JNW<br><br>ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS |

This matter comes before the Court on Rudina Mekolli's Petition for a Writ of Habeas Corpus. Dkt. No. 1. The Court GRANTS the Petition and ORDERS Mekolli's release for the reasons below.

## 1. BACKGROUND

Mekolli is a citizen of Albania who entered the United States in 1999. After going through immigration proceedings and applying for asylum, Mekolli received an order of removal, which became administratively final on June 14, 2005. Dkt. No. 9 ¶ 9. Immigration and Customs Enforcement ("ICE") did not detain

Mekolli when her removal order became final, nor did it issue an order of supervision ("OSUP"). *See generally* Dkt. No. 9. ICE did not make a custody determination about Mekolli when her removal order became final or after the 90-day statutory removal period expired on September 12, 2005. *See id.*; 8 U.S.C. § 1231(a).

According to ICE Deportation Officer ("DO") Kurtis Reed, the agency issued Mekolli a "Notice to Surrender for Deportation," dated November 3, 2005, requiring her to surrender on December 1, 2005. Dkt. Nos. 9 ¶10; 10-3. Mekolli states that she was unaware that she had a final removal order. Dkt. No. 3 ¶ 7 ("At the time, I understood that my asylum had been denied, but I did not realize that I had a removal order."). She did not surrender for deportation. ICE did not follow up with her or attempt to contact her. *See generally* Dkt.

Mekolli continued living in the United States. She explains that she had a social security number and did not try to hide her location. *See* Dkt. No. 3 ¶ 7. She lived near her family in Illinois for many years and went to college there. *Id.* ¶ 9. In 2014, Mekolli met her fiancé, who is a U.S. citizen. *Id.* ¶ 10. They have one eight-year-old son together and now live in Renton, Washington. *Id.* Mekolli is a licensed optician and senior leader at an eye care company. *Id.* ¶ 9. She flies regularly for work. Dkt. No. 12 ¶ 2.

On August 4, 2026, ICE "became aware that Petitioner was scheduled to board a flight at SeaTac International Airport in Seattle, Washington." Dkt. No. 9 ¶ 11. ICE agents arrested Mekolli as she boarded her flight. Mekolli states that the officers were dressed as civilians, would not identify themselves as ICE officers,

refused to show her identification, and did not tell her why she was being arrested. Dkt. No. 3 ¶¶ 12–15. After her arrest, Mekolli was detained at Northwest ICE Processing Center ("NWIPC"). Dkt. No. 9 ¶ 14.

On August 17, 2026, Mekolli refused to complete paperwork for a travel document to Albania. *Id.* ¶ 12. She says she fears returning there. Dkt. No. 12 ¶¶ 3–4.

## 2. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that her detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. § 2254). A district court's habeas jurisdiction extends to challenges to immigration-

related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

## 3. DISCUSSION

### 3.1 Statutory framework.

When a removal order against an individual becomes final, "the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682; 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the [noncitizen]."). If the Government does not remove the non-citizen within 90 days, then the noncitizen "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). But the Government may detain a noncitizen past the 90-day window for "a period reasonably necessary to bring about that[non-citizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689; 8 U.S.C. § 1231(a)(6).

It is undisputed that Mekolli's 90-day statutory removal period expired on September 12, 2005. Thus, she is not subject to mandatory detention under 8 U.S.C. § 1231(a)(2)(A). Thus, the statutory provisions likely governing Mekolli's post-removal-period detention are 8 U.S.C. § 1231(a)(6) (authorizing but not requiring detention past the 90-day removal period) and 8 U.S.C. § 1231(a)(3) (requiring supervision on release). *Orellana v. Hernandez*, 2:26-cv-01167-LK, 2026 WL 1283520, at *3 (W.D. Wash. May 11, 2026).

### 3.2 The Government revoked Mekolli's release.

Mekolli argues that ICE violated her procedural due process rights by revoking her release and detaining her without providing her with notice or a pre-deprivation hearing. She also argues that her detention violates ICE's own regulations, which impose certain procedural requirements when revoking release. Dkt. No. 11 (citing 8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i)). In response, the Government argues that because it never affirmatively granted Mekolli release, it did not "revoke" her release. Thus, according to the Government, it did not need to comply with any regulations or due process requirements governing release revocation. It explains that "no immigration official ever made a determination about Petitioner's release status after her removal order became final," and that "Petitioner took away the opportunity for . . . a determination concerning continued custody" when she failed to appear for her removal on December 1, 2005. Dkt. No. 8 at 7. Mekolli acknowledges that she never received an OSUP, but she argues that ICE impliedly granted her release on supervision when it chose not to detain her after the 90-day statutory removal period expired on September 12, 2005. *See* 8 U.S.C. § 1231(a)(3) (requiring supervision on release after the 90-day statutory removal period). Thus, according to Mekolli, the Government was required to comply with the law governing OSUP revocation when it detained her.

Under these circumstances, the Court agrees with Mekolli that ICE had effectively granted her release under 8 U.S.C. § 1231(a)(6). Thus, it was required to follow the law governing revocation of release when it detained her in 2026. The Court finds *Casilda Orellana v. Hernandez* helpful to its analysis. There, the

petitioner received a final order of removal in April 2025, but ICE did not detain her "immediately after the removal decision became final." 2026 WL 1283520, at *1. Instead, ICE permitted her "to live with her family, go to work, take her daughters to school, attend church, and take care of her grandchildren." *Id*. Then, nearly a year later, ICE arrested the petitioner at a scheduled check-in appointment. *Id*. Even though there was no OSUP in place, the court found that the regulations regarding OSUP revocation applied "because Respondents allowed Casilda Orellana to remain released following the removal period, indicating that she was effectively granted release under 8 U.S.C. § 1231(a)(6)." *Id*. at *4.

The same reasoning applies here. Like the petitioner in *Casilda Orellana*, Mekolli was not detained during her removal proceedings. Then, once a final removal order issued, the Government did not subject Mekolli to mandatory detention during the 90-day statutory removal period. Once that removal period was up, the governing statute provided the Government with two options. It could either release Mekolli on an OSUP, *see* 8 U.S.C. § 1231(a)(3), or it could detain her for a reasonable period of time to effectuate her removal under Section 1231(a)(6). The Government decided not to detain Mekolli when the 90-day removal period expired on September 12, 2005. As Mekolli was not detained, she was effectively released.

The Government argues that it never had a chance to make a custody determination about Mekolli or issue an OSUP, because she failed to appear for her scheduled removal to Albania on December 1, 2005. That argument is unpersuasive, though, because Mekolli's 90-day removal period expired on September 12, 2005.

Thus, under the governing statutory provisions, ICE should have decided to issue an OSUP or to detain Mekolli by September 12. No evidence suggests that ICE made or attempted to make a custody determination. Instead, it simply allowed Mekolli to remain released. Indeed, ICE sent Mekolli a letter scheduling her removal, dated November 3, 2005, acknowledging that she was not detained after the 90-day period. Dkt. No. 10-3. For the same reason, the Court need not resolve whether Mekolli knew of her removal order, which the Government disputes. *See* Dkt. No. 8 at 7. The Government's failure to act in 2005 cannot permit it to avoid due process requirements now.

The Government relies on *Lin v. Francis*, 25 Civ. 10001 (PAE), 2025 WL 3751855 (S.D.N.Y. Dec. 29, 2025), but that case is unpersuasive. There, the petitioner failed to appear for his removal hearing in immigration court and was ordered removed *in abstentia*. *Id*. at *1. The district court found that "[t]he agency had the statutory authority to detain [the petitioner] without notice. . . because [he] was subject to a final removal order and, having not appeared at his removal hearing or since, had never been released by ICE subject to conditions of supervision." *Id*. at *3. The facts of this case are materially different, as Mekolli appeared at her removal hearing; she was not ordered removed in abstentia. ICE had an opportunity to make a custody determination in this case. And as stated above, it is unclear why ICE failed to do so.

But even accepting *Lin*'s premise that Mekolli was never formally released on supervision, that does not answer whether due process required notice before she was re-detained. Courts in this district have rejected exactly that argument, find

that "[e]ven if [a] petitioner's arrest and detention was motivated by [a] final removal order issued *in absentia*, it does not necessarily follow that petitioner can be detained without a hearing." *Gregorio Ordoñez v. Bondi*, No. 2:25-cv-02356-JHC-TLF, 2025 WL 3852444, at *3–4 (W.D. Wash. Dec. 19, 2025). Whatever authority ICE had to detain Mekolli under Section 1231(a)(6), that authority did not excuse it from providing notice and an opportunity to be heard before exercising it. In any event, to the extent that the Court's reasoning is inconsistent with *Lin*, the Court does not find *Lin* persuasive and need not follow it.

The Government does not dispute that it failed to comply with regulations governing release revocation in this case. *See generally* Dkt. No. 8. Nothing in the record shows that ICE gave Mekolli notice of the reasons for revoking her release or an informal interview to respond to them. *See* Dkt. No. 3 ¶¶ 13–16. "Because it is undisputed that federal agencies must follow their own regulations" and that the Government cannot show it has done so here, the Court concludes that Mekolli's detention is unlawful and violates her constitutional right to due process. *Hernandez-Munoz v. Scott*, No. C26-964-KKE, 2026 WL 1102161, at *3 (W.D. Wash. Apr. 23, 2026); *Singh v. Blanche*, No. 2:26-cv-02838, 2026 WL 2620259, at *3 (W.D. Wash. Sept. 4, 2026) (citing *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025) ("[B]ecause ICE did not follow its own regulations in deciding to re-detain [Petitioner], his due process rights were violated, and he is entitled to release.")). The appropriate remedy for the violation of Mekolli's constitutional rights is release from custody. *Singh*, 2026 WL 2620259, at *3 (citing *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) ("Numerous

district courts, including courts in the Ninth Circuit, have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.") (citation modified)). Accordingly, Mekolli must be released.

### 3.3 Injunctive relief is warranted.

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *See Francisco Lorenzo v. Bondi*, Case No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting Roman, 977 F.3d at 941–42). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)); *cf. Cummings v. Connell*, 316 F.3d 886, 897–98 (9th Cir. 2003) (explaining there is no need to grant injunctive relief when the defendant cures the constitutional deficiency, and there is no indication it will revert to its constitutionally deficient practice).

Plaintiffs seeking equitable relief in the form of permanent injunctions must show: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see Francisco Lorenzo*, 2026 WL 237501, at *6 (applying permanent injunction standard to injunctive relief requested in immigration habeas proceedings). "In seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings*, 316 F.3d at 897 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Mekolli has demonstrated that a permanent injunction is necessary. She suffered irreparable injury when she was deprived of her liberty without due process. No monetary remedy can compensate for that constitutional deprivation. The balance of hardships favors Mekolli, as the injunction requires only that the Government comply with due process and its own regulations before re-detaining her. And the public interest is served by an order prohibiting the Government from violating the Due Process Clause and its own regulations. The Court further finds that injunctive relief is appropriate because Mekolli has shown a "cognizable danger of recurrent violation." *Cummings*, 316 F.3d at 897 (quoting *W.T. Grant Co.*, 345

U.S. at 633). ICE has detained her once already in violation of her due process rights, and nothing in the record dissuades the Court that it will not do so again.[1]

The Government also argues that the Court lacks jurisdiction to grant the requested relief under 8 U.S.C. § 1252(g). Dkt. No. 8 at 10. The Court considers and rejects this argument. *See Ahmad v. Whitaker*, No. C18-287, 2018 WL 6928540, at *4 (W.D. Wash. Dec. 4, 2018), *R & R adopted*, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019) (rejecting government's argument that 8 U.S.C. § 1252(g) precluded jurisdiction over challenge to revocation of OSUP and collecting cases).

---

[1] *See e.g., Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1203 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025); *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1234 (W.D. Wash. 2025); Singh, 2026 WL 2620259, at *2–3; *Rahmani v. Scott*, No. 2:26-cv-02423-JNW, 2026 WL 2581952, at *5 (Sept. 1, 2026); *Garcia Radillo v. Scott*, No. 2:26-cv-02357-JHC, 2026 WL 2168044, at *4 (W.D. Wash. July 28, 2026); *Pablo v. ICE Field Off. Dir.*, No. 2:26-cv-01197-JHC, 2026 WL 2098018, at *5–6 (W.D. Wash. July 21, 2026); *Victoriano v. Mullin*, No. 2:26-cv- 00886-RAJ, 2026 WL 1194596, at *8 (W.D. Wash. May 1, 2026); *Soto v. Bondi*, 2:26-cv-00652-BAT, 2026 WL 972731, at *7 (W.D. Wash. Apr. 10, 2026); *Medero v. Hermosillo*, No. C26-0568JLR, 2026 WL 891355, at *3 (W.D. Wash. Apr. 1, 2026); *Gomez Candelo v. Noem*, No. 2:26-cv-00576-JNW, 2026 WL 879049, at *3–*4 (W.D. Wash. Mar. 31, 2026); *Bravo-Zambrano v. Bondi*, No. C26-0167JLR, 2026 WL 879245, at *5 (W.D. Wash. Mar. 31, 2026); *Sing Uppal v. Noem*, No. 2:26-cv-00711-RAJ, 2026 WL 864682, at *3 (W.D. Wash. Mar. 30, 2026); *Husen v. Noem*, No. 2:26-cv-00498-JHC, 2026 WL 632365, at *5 (W.D. Wash. Mar. 6, 2026); *Arrega Morales De Putul v. Hermosillo*, No. 2:26-cv-00129-GJL, 2026 WL 468637, at *2 n.1 (W.D. Wash. Feb. 19, 2026) (collecting cases); *Teweldemedhin v. Noem*, No. C25-2363JLR, 2026 WL 172029, at *4–5 (W.D. Wash. Jan. 22, 2026); *Todd v. Bondi*, No. 25-cv-02519-JHC, 2026 WL 145725, at *6 (W.D. Wash. Jan 20, 2026); *Manuel v. Hermosillo*, C25-2353-TL-MLP, 2025 WL 3690778, at *2–*4 (W.D. Wash. Dec. 10, 2025); *Rodriguez v. Bondi*, C25-2167RSM, 2025 WL 3466925, at *2 (W.D. Wash. Dec. 3, 2025); *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *4 (W.D. Wash. Nov. 25, 2025) (collecting cases); *Dejesus v. Bostock*, No. 25-cv-01427-JHC-TLF, 2025 WL 3268002, at *4 (W.D. Wash. Nov. 24, 2025).

## 4. CONCLUSION

Accordingly, the Court ORDERS:

1. The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.
2. Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) HOURS of this order, subject to appropriate conditions under 8 U.S.C. § 1231(a).
3. Petitioner may not be re-detained unless Respondents provide a notice and pre-deprivation hearing. Respondents must also comply with their own regulations governing revocation of release.
4. Within FORTY-EIGHT (48) HOURS of this order, Respondents must provide the Court with a status report confirming that Petitioner has been released from custody and informing the Court of the date and time of her release.

Dated this 25th day of September, 2026.

Jamal N. Whitehead
United States District Judge